IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN MCGUIRE,<br><br>Defendant. | CR 18-157-BLG-SPW-3<br><br>ORDER DENYING<br>MOTION FOR NEW TRIAL |

The Defendant, Ryan McGuire, has filed a motion for a new trial in this matter. (Doc. 91.) The Court denies McGuire's motion.

I.  **Background**

After a two-day trial, a jury found McGuire guilty of conspiracy to distribute methamphetamine and distribution of methamphetamine. (Docs. 77, 80.) McGuire timely filed a motion for a new trial (Doc. 91), and that motion is now ripe. McGuire states there are two bases for the Court granting his motion. (Doc. 92 at 2.)

First, McGuire argues the Court erred by sustaining an objection the Government made to admitting testimony McGuire's trial counsel attempted to illicit from Agent Joseph Osborne. McGuire's trial counsel planned to ask Agent Osborne about a statement one of McGuire's coconspirators, Angela Killen, made purportedly identifying a different individual as the one who supplied the meth for

1

the undercover buy that led to McGuire's charges. The Government objected on hearsay grounds, and the Court sustained the objection. (*Id.*)

Second, McGuire argues the Court erred by granting the Government's motion to compel McGuire to roll up his left sleeve during trial and display his tattoos to a witness for identification purposes. (*Id.* at 7–10.) Upon seeing McGuire the morning of trial, the Government alleged he had substantially changed his appearance since the time of his arrest. The Government therefore moved to compel McGuire to display the tattoos on his left arm and hands to witnesses and the jury. The Court granted the Government's motion and required McGuire to display the tattoos on his left arm to the Government's first witness, Special Agent Christopher Cavanaugh. After seeing the tattoos, Special Agent Cavanaugh was able to positively identify McGuire. McGuire contends (as he did at trial) that the Court's ruling violated his Fifth Amendment rights and his right to present a defense. (*Id.*)

## II. Legal Standard

Fed. R. Crim. P. 33 governs motions for new trials and authorizes the Court, upon the defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." The Court's discretion when granting a motion for a new trial is much broader than when granting a motion for judgment of acquittal. *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992). "The district court need not view the evidence in the light most favorable to the

verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

### III. Discussion

*1. The Government's hearsay objection.*

*Hearsay* is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible unless the Federal Rules of Evidence, a federal statute, or another rule prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802.

Angela Killen's statements to law enforcement are (and were) hearsay. McGuire attempted to admit Angela Killen's statements through Agent Osborne to prove the truth of the matter asserted—that is, another individual provided the meth during the undercover buy, not McGuire. However, McGuire asserts two reasons for why the Court should have admitted the hearsay: first, the Government's objection unlawfully suppressed exculpatory evidence; second, the Court's refusal to admit the hearsay statements violated McGuire's right of due process of law. (Doc. 92 at 4–7.)

McGuire relies on *Benn v. Lambert*, 283 F.3d 1040, 1052–53 (9th Cir. 2002) in support of his first argument. His reliance is misplaced. In *Benn*, the 9th Circuit affirmed a district court's decision to grant a petition for a writ of habeas corpus

3

because state prosecutors had failed to disclose critical evidence favorable to the petitioner—i.e., *Brady* material under *Brady v. Maryland*, 373 U.S. 83 (1963). Nothing of the sort happened here, and McGuire does not allege the Government failed to turn over exculpatory evidence. McGuire plainly had access to Angela Killen's statements. *Benn* and *Brady* are irrelevant.

For his second argument, McGuire relies on *Chambers v. Mississippi*, 410 U.S. 284 (1973). Like his reliance on *Benn*, McGuire's reliance on *Chambers* is misplaced. In *Chambers*, after Chambers was arrested for murder, another individual, McDonald, made but later repudiated a written confession to the crime. *Id.* at 288–89. On three separate occasions, McDonald also confessed to the murder in private conversations with friends. *Id.* Chambers proceeded to trial, but when Chambers called McDonald to testify, the trial court prevented him from cross-examining McDonald about the confessions because, under Mississippi's *voucher* rule, he could not impeach his own witness. When Chambers attempted to introduce testimony of the three persons to whom McDonald confessed, the trial court ruled the testimony was inadmissible hearsay. *Id.* at 291–94.

The Supreme Court reversed Chambers's conviction. It held the application of the *voucher* rule deprived Chambers of the right to contradict clearly adverse testimony. *Id.* at 297. It also held the trial court erred in excluding McDonald's hearsay statements because they bore considerable assurances of reliability: they

were made spontaneously to close acquaintances shortly after the murder, they were corroborated by other evidence in the case, each confession was unquestionably against McDonald's interest, and McDonald was present during trial and available for cross-examination by the State. *Id.* at 300–02. Moreover, the Supreme Court issued the following limitation on its conclusion:

> In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.

*Id.* at 302–03.

*Chambers* is inapplicable here. McGuire was free to call Killen as a witness and could have cross-examined her about her prior statements. He chose not to. Further, Killen's statement bore none of the assurances of reliability present in *Chambers*. Nor do the facts and circumstances of McGuire's inability to admit Killen's hearsay statements indicate McGuire was deprived of a fair trial. Instead, Killen's statements were inadmissible hearsay, but McGuire was free to admit them through Killen herself.

2. *The Court's order for McGuire to display his tattoos.*

The Court has already ruled on the issue of whether McGuire could be compelled to display his tattoos in oral and written orders with specific findings of fact. *See* (Doc. 78). The Court concluded that compelling McGuire to display his

5

tattoos would neither be unduly burdensome, prejudicial, nor violative of his Fifth Amendment rights. (*Id.*) The Court's position remains unchanged. Despite McGuire's arguments about the orders' impact on his Fifth Amendment rights and his right to present a defense, the Court placed no restraint on McGuire's ability to testify. He had the opportunity to testify and call witnesses of his own, but he chose not to.

## IV. Conclusion

For the foregoing reasons, the interest of justice does not require a new trial. *See* Fed. R. Crim. P. 33(a). Angela Killen's statements to law enforcement were inadmissible hearsay without an exception. Compelling McGuire to display the tattoos on his left arm did not violate his Fifth Amendment rights or his right to present a defense. Accordingly,

**IT IS HEREBY ORDERED** that the Defendant's Motion for a New Trial (Doc. 91) is DENIED.

DATED this 17th day of December, 2019.

SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE